**In re RICHMOND TANK CAR COMPANY, d/b/a Richmond Industries, Inc., Debtor.**

**Bankruptcy No. 87–01837–H3–11.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 3, 1988.

John Melko, Sheinfeld, Maley & Kay, Houston, Tex., for debtor.

Tim S. Leonard, Kirklin, Bouderaux & Joseph, Houston, Tex., for Scullin Steel Co.

## MEMORANDUM AND ORDER

LETITIA Z. CLARK, Bankruptcy Judge.

The Court having heard argument of counsel and reviewed the post-hearing briefs on Scullin Steel Company's Motion to Change the Membership of the Creditors' Committee, enters the following Order. To the extent any findings of fact herein are deemed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are considered to be findings of fact, they are hereby adopted as such.

### Findings of Facts

Richmond Tank Car ("Debtor") filed a Chapter 11 petition on February 23, 1987. An Unsecured Creditors' Committee was duly appointed. On April 7, 1987, American General Insurance Company withdrew as a member of the Unsecured Creditors' Committee. This left only six members on the Creditors' Committee, and thus a vacancy. On July 9, 1987, Scullin Steel Company ("Scullin") filed its proof of claim in the amount of $7,718,405.70, and simultaneously filed a Motion to Change the Membership of the Creditors' Committee. Debtor objected to Scullin's motion.

Approximately one million dollars of Scullin's claim is based on a sale of goods to the Debtor. The balance is based on Scullin's claim of lost profits under a long term contract for the sale of goods. Both parties agree that the amount of the claim is disputed and subject to state court litiga-

tion which began about two years prior to the filing of Debtor's petition.

Scullin contends that it should be added to the Creditors' Committee because it is the largest unsecured trade creditor, because it would represent a class of disputed claims, and because there is currently a vacancy on the Committee. The Debtor counters that there is already one trade creditor on the Creditors' Committee and alleges that Scullin is attempting to gain an advantage in the state court litigation against Debtor by being added to the Committee and thereby gaining access to undisclosed information in the Debtor's possession.

### Conclusions of Law

In a Chapter 11 case, a creditors' committee is appointed pursuant to 11 U.S.C. § 1102 which provides in pertinent part:

(a)(1) As soon as practicable after the order for relief under this chapter, the court shall appoint a committee of creditors holding unsecured claims.

(b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under the chapter, if such committee was fairly representative of the different kinds of claims to be represented.

(c) On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

11 U.S.C. § 1102(a)(1), (b)(1) and (c).

The motion before this Court does not require us to consider whether the original membership or size of the committee should be changed. What is here decided is the narrower issue of whether, when one member of the committee withdraws leaving a vacancy on the committee, it is appropriate to fill that vacancy with a second unsecured trade creditor, which has filed a disputed claim in an amount which would make it the fifth largest unsecured claimant, and originally eligible for the committee pursuant to Section 1102(b)(1). Closely related to this question is the question of whether the disputed nature of this claim alone should disqualify the creditor from serving on the Creditors' Committee.

■ A creditor is one whose "claim against the debtor ... arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(9)(A). A creditor has a claim when the creditor has either a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed, legal, equitable, secured, or unsecured.

11 U.S.C. § 101(4)(A) (emphasis added). The fact that Scullin has a "disputed" claim which is currently being litigated in state court does not nullify Scullin's claim or Scullin's status as an unsecured creditor.

■ The requirements to qualify for the Unsecured Creditors' Committee are essentially three: "1) one must be a creditor; 2) one must hold a claim; and 3) the claim held must be unsecured." *In re Bennett*, 17 B.R. 819 (Bankr.D.N.M.1982). Scullin filed a proof of claim against Richmond Tank Car in the amount of $7,718,405.70. At the hearing, Richmond Tank Car did not present any evidence regarding the value of Scullin's claim. Thus, we take these figures to be an accurate statement of the claim, until resolution of Debtor's objection to the claim. Accordingly, Scullin is qualified pursuant to Section 1102(b)(1) to be on the Unsecured Creditors' Committee.

■ The only remaining question is whether the disputed nature of the claim and the fact that the parties are involved in on-going state court litigation, creates a conflict of interest sufficient to exclude Scullin from the Creditors' Committee.

The Debtor contends that Scullin's dispute with Richmond Tank Car prevents Scullin from representing other creditors in a disinterested fashion. In support of this position, Debtor cites *In re Johns–Manville*, 26 B.R. 919 (Bankr.S.D.N.Y.1983), where a member of the creditors' committee also represented an asbestos litigant, and in violation of the automatic stay filed an action against the debtor in state court. The bankruptcy court, finding that a conflict of interest existed, arrived at its decision by considering the functions of reorganization committees.

> Empowered by Section 1103(c), committees may (1) consult with the debtor concerning the administration of the case; (2) investigate the acts, conduct, assets, liabilities, financial condition and operation of the debtor's business; (3) participate in the formulation of a plan, advise and make recommendations regarding the plan to those represented, and collect and file acceptances for the plan; (4) request the appointment of a trustee or examiner; and (5) perform any other services that are in the interests of those represented.

*Id.* at 925 (citing 5 Collier on Bankruptcy ¶ 1103.07 at 1103–15 to 1103–26). The *Johns–Manville* court concluded that "where a committee representative or agent seeks to represent or advance the interest of an individual member of a competing class of creditors or various interests or groups whose purposes and desires are dissimilar, this fiduciary is in breach of his duty of loyal and disinterested service." *Id.*

Debtor also cites *In re Charter Co.*, 44 B.R. 256, 258 (Bankr.M.D.Fla.1984), where the court removed a creditor from the committee because of a high likelihood of a conflict of interest. Finally, Debtor refers the Court to *In re Allied Delivery Systems Co.*, 52 B.R. 85 (Bankr.N.D. Ohio 1985), where a labor union was denied a place on the committee, after it had been formed, because the Union had filed an unfair labor practices charge against the debtor. Richmond Tank Car likewise contends that Scullin's state court lawsuit based on breach of contract creates a similar conflict of interest and would render Scullin incapable of being disinterested.

Scullin, in response to Debtor's arguments, cites *In re Grynberg*, 10 B.R. 256 (Bankr.D.Colo.1981), where the court stated that "there is no statutory basis for the exclusion of creditors holding disputed unsecured claims." *Id.* at 257.

The cases relied upon by the Debtor to exclude Scullin from the Committee are distinguishable from the instant case. In *In re Charter, supra,* the creditor was an equity security holder, whose ownership of preferred shares gave him an interest in the debtor corporation which was at odds with the general unsecured creditors because the value of his shares would be determined by the number and amount of claims against the corporation. Therefore, his claim was dissimilar and he had an interest in seeking to undermine the unsecured claims.

In the *Allied* case, the court's decision was not based solely on the fact that the Union was in an adversarial relationship with the debtor. The court also noted that the priority claimants which the Union represented differed in kind from the general unsecured claimants. Also, the Union sought to represent a claimant who had previously been appointed to serve on the committee, but declined to do so.

■ Finally, the *Johns–Manville* case involved the removal from the Committee of a lawyer who had flagrantly violated the stay in an effort to advance the interest of his client. There were specific acts which the court addressed as indicia of a conflict of interest and a breach of fiduciary duty. The opinion does not hold that all disputed claims create a conflict of interest justifying exclusion from the creditors' committee. This would result in a "per se" conflict of interest rule resulting in exclusion from the committee of any claimant involved in litigation or who could potentially be involved in litigation against the debtor. This Court considers it the better view that, until actions are taken which indicate some breach or conflict, "the court should not deny a creditor a position on a creditors'

committee based upon 'speculation.'" *Matter of Enduro Stainless Steel, Inc.,* 59 B.R. 603, 605 (Bankr.N.D.Ohio 1986). To suggest that one creditor's attempt to protect and establish its claim is grounds for exclusion of the creditor from the committee fails to take into consideration that the interests of creditors often differ from one another, as well as from the interests of the debtor.

The Debtor has also expressed concern about Scullin's taking advantage of its position on the Creditors' Committee to advance its interests in the state court litigation. As the court in *Matter of Enduro* pointed out, "adequate remedies exist in the event the parties are unable to agree upon a method of appropriately protecting the confidentiality of the debtor's ... information." *Id.* at 605. Any decision as to future misconduct of Scullin would be premature at this time.

It should also be noted that no other creditor has objected to Scullin's appointment to the Committee, and one creditor appeared at the hearing on this matter in support of Scullin's appointment.

Therefore, in view of the fact that Scullin has the fifth largest unsecured claim, the largest unsecured trade claim, and the fact that a vacancy exists on the committee, which no other creditor has applied to fill, Scullin should be appointed to Committee. It is therefore

ORDERED that Scullin Steel Company be appointed to fill the vacancy on the Unsecured Creditors' Committee.